553 A.2d 707

Michael L. COLLINS, Sr.

v.

UNITED PACIFIC INSURANCE COMPANY.

No. 39, Sept. Term, 1987.

Court of Appeals of Maryland.

March 1, 1989.

Richard R. Beauchemin (Arnold, Beauchemin & Tingle, P.A., on the brief), Baltimore, for appellant.

Daniel J. Dregier, Jr. (Allewalt & Murphy, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

At issue here is a dispute between a worker's compensation insurer and a claimant concerning the proper apportionment of attorney's fees and expenses following a successful action against a tort-feasor who caused the compensable injury.

## I.

Michael L. Collins, Sr. (claimant) suffered injuries as a result of an automobile accident which occurred on 22 November 1978, while the claimant was in the course of his employment with the Board of Education of Baltimore County. Through his attorney, Collins filed a timely claim for worker's compensation benefits on 17 May 1979. By order of 31 October 1979, the Workmen's Compensation Commission allowed the claim. Later orders of the Commission fixed the period of disability of the claimant, and ultimately United Pacific Insurance Company (the insurer) paid worker's compensation benefits totalling $51,470.21.

On 9 July 1981, the attorney representing the claimant in the worker's compensation case filed a tort action on behalf of the claimant individually, and on behalf of the claimant and his wife for loss of consortium, against the person who had allegedly caused the accident (the tort-feasor). Approximately one month prior to the trial of that action, on 26 March 1985, an amended complaint was filed joining the insurer as a use plaintiff and entering the appearance of the insurer's attorney. The action was tried before a jury for five days, and resulted in judgments in favor of the claimant and the insurer for $175,000 and in favor of the claimant and his wife for $50,000.[1] The insurer does not claim any interest in the $50,000 award, but does seek reimbursement from the larger award for compensation benefits paid.

The claimant, although conceding that the insurer is entitled to reimbursement from the proceeds of the third

---

1. The jury awarded $75,000 to the claimant and his wife on their consortium claim, but this verdict was reduced to $50,000 to conform to the demand in the pleadings.

party action, contends that the insurer's recovery must be reduced by one-third to satisfy the attorney's fee the claimant paid to his attorney, and must also be reduced by one-half of the costs and expenses necessarily incurred in the successful prosecution of the action. The insurer contends that no deduction should be made from its share of the recovery for attorney's fees because the insurer hired and paid its own attorney in connection with the action. Concerning the costs and expenses, the insurer argues that it should share the expenses with the claimant in the same proportion that its share of the recovery bears to that of the claimant, i.e. 29 percent.

Because the parties agreed that the carrier was in any event entitled to $31,880.34 (the amount of benefits paid, less one-third attorney's fees and one-half of costs and expenses), that amount was paid to the insurer and the balance of $19,589.87 was placed in escrow. The claimant then brought an action in the Circuit Court for Baltimore County for declaratory relief, and that action was heard by Judge J. William Hinkel. Judge Hinkel found that the insurer's claim must be reduced by an appropriate share of the attorney's fees and expenses. He agreed with the insurer that its liability for the expenses was 29 percent of the total expenses. Implicitly, he found that the attorney's fee agreed to by the claimant and his attorney, a contingent fee of one-third of the amount of any recovery, was reasonable. However, he also concluded that a fair allocation of the entire fee was 95 percent to the claimant's attorney and 5 percent to the insurer's attorney. Accordingly, Judge Hinkel declared that the insurer was entitled to a credit of 5 percent of the attorney's fee attributable to the $175,000 judgment. The claimant appealed, and we granted certiorari before this case was considered by the Court of Special Appeals.

## II.

The legislature has addressed the question of who may bring an action against a third party following an

award of worker's compensation benefits, and how distribution of a recovery is to be made. Section 58 of Article 101 of the Maryland Code (1957, 1985 Repl.Vol.) makes clear that a claimant does not lose the right to proceed against a tort-feasor by accepting worker's compensation benefits.[2] Additionally, that section creates a right of subrogation in favor of the insurer for benefits paid.[3] If the insurer brings the action against the third party, it is required to pay to the claimant any "excess" recovery. If the claimant brings the action, the claimant must first satisfy the subrogated interest of the insurer out of the proceeds of any settlement or judgment.[4] Prior to 1947, the legislature fixed the amount of the net subrogated interest of the insurer, i.e., the amount it was entitled to retain if it brought the action or the amount it was entitled to receive if the claimant brought the action, as the amount of compensation benefits paid less the "expenses and costs of action." Article 101, § 72, Md.Code (1939, 1943 Supp.). Accordingly, in *Barrett v. Indemnity Ins. Co.*, 152 Md. 253, 136 A. 542 (1927), our predecessors held that counsel fees incurred by a claimant in obtaining a third party recovery were not chargeable against the statutory lien of the insur-

---

**2.** This has not always been the case. As originally enacted, the Maryland compensation statute granted to the employer and insurer the exclusive right to enforce third party liability when compensation had been awarded or paid. *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 221, 492 A.2d 1286 (1985).

**3.** The statute protects the subrogated rights of the employer, insurer, state accident fund, subsequent injury fund, or uninsured employer's fund, as the case may be. For the sake of brevity, we refer only to the insurer.

**4.** Any excess paid to or retained by the claimant serves to reduce the liability of the insurer for additional worker's compensation benefits to which the claimant might otherwise be entitled. We have not had occasion to determine whether a dollar-for-dollar credit is required in that instance, or whether consideration must be given to any attorney's fees paid by the claimant to produce the amount representing the excess. *See Hubbard v. Livingston Fire Pro.*, 289 Md. 581, 426 A.2d 901 (1981). *See also*, Atleson, *Workmen's Compensation: Third Party Actions and the Apportionment of Attorney's Fees*, 19 Buffalo L.Rev. 515, 533 (1969–70).

er. This result was changed by ch. 608 of the Acts of 1947, providing that when the claimant accomplished the recovery he should "first retain therefrom the expenses and costs of action incurred" and then pay to the insurer the amount of compensation benefits theretofore paid or awarded,

> except Court costs and counsel or attorney's fees, which shall be paid by the [claimant] and the [insurer] in the proportion that the amount received by each shall bear to the whole amount paid in settlement of any claim or satisfaction of any judgment obtained in the case....

As the Court of Special Appeals pointed out in *Metz v. Fireman's Fund Insur.*, 15 Md.App. 179, 182–83, 289 A.2d 830 (1972), the statute provides clear guidance when one attorney effects the third party recovery, but does not speak to the situation that arises when the claimant and the insurer are represented by different attorneys in the third party action. In the case before us, although the claimant's attorney initiated the third party action and controlled it throughout the trial, the insurer's attorney entered his appearance approximately one month before trial when the insurer was joined as an additional plaintiff, and thus we must address the question left unanswered by the statute.

The approach favored by the insurer is that taken by Judge Holtzoff in *McCally v. Hartford Accident & Indemnity Co.*, 247 F.Supp. 444 (D.D.C.1965). There, the claimant was injured in Maryland and received benefits pursuant to the Maryland Workmen's Compensation Law. The claimant's attorney then pursued a claim against the alleged tort-feasor and, after protracted negotiations but before the filing of a third party action, settled the claim for the total amount of the tort-feasor's liability insurance coverage plus funds contributed by the tort-feasor.

Applying Maryland law, Judge Holtzoff correctly noted that § 58 of Art. 101 requires that attorney's fees incurred by the claimant in connection with the third party claim "are to be apportioned as between the employee and the workmen's compensation carrier in proportion to the

amounts that they receive out of the proceeds of the third party claim." *McCally*, 247 F.Supp. at 446. With respect to the contention of the insurer that it should not be charged a full proportionate share because a substantial amount of the work that produced the settlement had been accomplished by its Regional Claims Manager, Judge Holtzoff first stated:

> It is a fact, and the Court finds that [the claims manager] actively participated with [claimant's attorney] in the negotiations which led to the settlement. The mere fact, however, that a party assists counsel in the work that the latter does, does not abrogate liability for counsel fees. In many cases counsel is actively aided by his client. It does not follow that the client does not have to pay counsel fees. *Id.*

The judge went on to note, however, that counsel for the claimant had conceded that "[a]s a matter of equity, ... it is fair that some recognition should be given to [the insurer] for the fact that part of the work that resulted in the settlement was performed by its own representative." *Id.* After determining the amount which would constitute a fair fee for the recovery of that portion of the settlement representing the insurer's claim, Judge Holtzoff decided that only 50 percent of that amount should be deducted from the insurer's recovery, apparently on the basis that the effort which produced the settlement was equally divided between the claimant's attorney and the insurer's representative.

The claimant argues that the later case of *Thomas v. Aetna Casualty and Surety Company*, 473 F.2d 164 (D.C. Cir.1972), represents the better interpretation of Art. 101, § 58. In *Thomas*, the claimant sustained a compensable injury in Maryland, and the compensation insurer paid $22,-000 in benefits. Claimant's attorney then brought a third party action in the District of Columbia, and the tort-feasor

required the joinder of the compensation insurer as a real party in interest.[5] The insurer then retained its own attorney, who prepared answers to interrogatories put to the employer and insurer, participated in some minor pre-trial activities, and made a brief closing argument to the jury. Following a jury verdict in favor of the claimant and insurer for $75,000, the claimant requested that the trial judge determine the amount to be paid to the insurer in satisfaction of its statutory lien. In the post-trial proceedings that followed, the insurer claimed it was entitled to the full sum of $22,000, and that no deduction for a proportionate part of the claimant's attorney's fees should be allowed because the insurer had retained and paid its own attorney. The trial judge agreed, but the Court of Appeals reversed and directed that the insurer be charged with the entire portion of the attorney's fees properly attributed to the lien amount (22/75ths). The Court said:

---

5. The *Thomas* court applied District of Columbia law in holding that the insurer was a real party in interest. *City Stores Co. v. Lerner Shops of District of Columbia, Inc.,* 410 F.2d 1010 (D.C.Cir.1969). It opined, however, that the same result would obtain in Maryland because of the requirements of Art. 75, § 3, Md.Code (1951). That statute specifically provided that a person having a claim by reason of subrogation was a real party in interest, and that joinder could be compelled upon petition by a defendant. That statute was later repealed and replaced by Maryland Rule 203, and Rule 203 has now become Rule 2–201. Under ordinary circumstances, a person claiming pursuant to a subrogation interest continues to be a real party in interest. P. Niemeyer and L. Richards, *Maryland Rules Commentary,* 92. We need not here consider whether the legislature intended a different result by expressly granting the claimant the right to bring a third party action if the insurer did not do so within two months of the award of compensation. *Cf. City of Baltimore v. Moore,* 209 Md. 516, 121 A.2d 857 (1956); *Stark v. Gripp,* 150 Md. 655, 658–59, 133 A. 338 (1926). We note, however, that the claimant's right to maintain the third party action is not exclusive, for we have held that the insurer enjoys a right concurrent with that of the claimant to bring a third party action even after the two month statutory period has passed, and the insurer has an absolute right to intervene in a third party action brought by the claimant. *See Smith v. Bethlehem Steel Corp.,* 303 Md. 213, 222–24, 492 A.2d 1286 (1985); *Johnson v. Miles,* 188 Md. 455, 460, 53 A.2d 30 (1947); *Railway Co. v. Assurance Corp.,* 163 Md. 97, 101, 161 A. 5 (1932).

The intent of the statute is clear beyond dispute. The party bringing the suit is entitled to have the other party, which has benefited from the suit as a co-plaintiff (albeit initially a reluctant one), contribute its share of attorney's fees and court costs. The non-instituting party plaintiff may, of course, retain separate counsel to represent its own interest. If the party does, however, it does so voluntarily and its unilateral action has no effect on its statutory obligation to share in the expenses incurred by the instituting party. To hold otherwise would render the statute meaningless since a party could avoid contribution by simply hiring a lawyer.

*Thomas, supra,* 473 F.2d at 166.

Concerning the necessity for any adjustment of the amount of attorney's fees apportioned to the insurer by the statute, the Court said:

[The insurer] would have been required to act in the role of witness and furnish all relevant information on demand of either party to the lawsuit, whether the carrier was ever named as a real party in interest or not. Thus there is no basis for arguing that answering the depositions was done as an extra service to [the claimant] in furtherance of [his] case. Without in any way reflecting adversely on [the insurer's] counsel's capacity, under the circumstances here there is no reason to think that [the insurer's] pre-trial efforts or closing statement to the jury aided in the successful conclusion of the case. Certainly both of these activities could have been delegated to [claimant's] counsel without adversely affecting the outcome. *Id.* at 167.

The *Thomas* court distinguished *McCally,* pointing out that in *McCally* the insurer had performed important services that benefited the claimant; that the claimant had encouraged the insurer to provide those services; and, that on a theory of quasi-contract the insurer was entitled to a credit for the fair value of those services. The *Thomas* court said that in the case before it, "[w]e note it was the defendant

who desired [the insurer's] presence as a party in the law suit, not [the claimant]. 473 F.2d at 167.

Our Court of Special Appeals considered the problems of apportionment and allocation of attorney's fees under Art. 101, § 58 in *Metz, supra.* In that case, the claimant filed a third party action more than two months after he had secured an award of compensation. Although the action was styled in the name of the claimant to his own use and to the use of the compensation insurer, it does not appear that the claimant's attorney had made any arrangements with the insurer to provide exclusive representation. After all discovery had been completed, and the trial had twice been postponed, another attorney entered his appearance on behalf of the insurer. Over the vigorous objections of claimant's counsel, the trial judge allowed the insurer's attorney to participate at trial and, in addition to full participation by claimant's counsel, allowed the insurer's attorney to: deliver an opening statement; cross-examine defense witnesses; call a witness to prove the amount of the insurer's lien; and, make a closing argument.[6] The jury returned a verdict in favor of the claimant for $30,000, and for the claimant to the use of the insurer for $4,465. The trial judge was asked to apportion the attorney's fees and costs in accordance with Art. 101, § 58. He did apportion the costs, but determined that the insurer should not be charged with any portion of the claimant's attorney's fees because the insurer had provided its own attorney.

The Court of Special Appeals vacated the order of the trial judge and remanded for a hearing to "determine what percentage of the total fee payable on the combined judgments the respective attorneys are entitled to receive based on their respective efforts and contributions to the total legal services rendered and the results achieved." *Metz, supra,* 15 Md.App. at 185, 289 A.2d 830. The Court of

---

6. The opinion and briefs in *Metz* do not indicate whether the tort-feasor interposed any objection to this double-barreled approach to the presentation of a single claim.

Special Appeals, stating that it found Judge Holtzoff's opinion in *McCally* to be "reasonable and persuasive," noted that the claimant had made the insurer a party to the action when he need not have done so, and that as a party the insurer was clearly entitled to be represented by an attorney of its own choice. Conceding that post-trial proceedings to sort out the quantity and quality of each attorney's contributions to the success of the action may be "a cumbersome and perhaps tedious procedure," it nevertheless found that such a procedure was justified by the facts of that case.

Our view of the problem and its solution comports very closely with that of the United States Court of Appeals for the District of Columbia in *Thomas, supra.* The legislature clearly gave the claimant the unfettered right to bring the third party action at any time after two months following the award of compensation. We believe the legislature contemplated that under ordinary circumstances the action would then be prosecuted to a conclusion by the claimant's attorney and, assuming the recovery was sufficient, the insurer would recover the amount it had paid in benefits less a proportionate share of the attorney's fees, costs and expenses. As the Court of Special Appeals pointed out in *Metz*, the procedure is clear when the case follows the anticipated course, and the third party claim is pursued by a single attorney. 15 Md.App. at 182–83, 289 A.2d 830.

The questions then arise, under what circumstances will the insurer be represented in the third party action, and what effect will that representation have on the apportionment of attorney's fees? As we have pointed out, the insurer has an absolute right to intervene in an action brought by the claimant. We hold, however, that unless the insurer is able to demonstrate that good cause existed to justify the intervention and active participation of its attorney in the action, the insurer should expect to bear the expense of its own attorney and therefore receive no credit against the statutory apportionment of the claimant's attorney's fees.

■ On the other hand, if the claimant invites the insurer's attorney to participate in negotiations prior to suit, or in the action itself, the insurer is entitled to an appropriate credit, and to that extent we agree with the underlying rationale of *McCally*.[7] Additionally, if the insurer has good and demonstrable cause to believe that its interests will not be adequately protected unless it intervenes in the action, it should be entitled to a credit for the reasonable value of the services of its attorney required to protect those interests. And, even when there exists no reasonable question concerning the ability of the claimant's attorney to effectively prosecute the third party action, if the claimant's attorney is unwilling to keep the insurer reasonably advised of the progress of the claim, the insurer may be required to intervene. Moreover, where the interest of the insurer appears to exceed that of the claimant, there may exist reasonable grounds for the insurer to intervene and control the litigation.[8]

Even when circumstances demonstrate the necessity of intervention by the insurer and separate representation by its attorney, the insurer will be entitled to credit only for the services of its attorney reasonably required to protect

---

**7.** Our agreement with the basic rationale of *McCally* is not to be interpreted as approval of the concept of granting a credit against attorney's fees based on the efforts of a non-lawyer. We need not, and do not, express a view on that matter.

**8.** The extent to which each counsel will be permitted to participate in the actual trial of the third party claim is, of course, within the control of the presiding judge. In the instant case, the tort-feasor objected to the double-barreled representation that was permitted in *Metz*. The trial judge here correctly ruled that only one attorney for the plaintiff would be permitted to make an opening statement, examine or cross-examine a witness, or present opening or closing argument. The attorneys on the plaintiff's side were free to alternate their handling of witnesses, or to agree among themselves concerning the handling of other matters in the trial, but they could not duplicate efforts to the prejudice of the defendant. In the absence of an agreement between the attorneys for the claimant and the insurer, and in the absence of a contrary ruling by the trial judge, lead counsel for the plaintiff's side will make these decisions. In this case, lead counsel clearly was counsel for the claimant.

its interests. The circumstances that will support the intervention of the insurer for purposes of general monitoring, for example, will not necessarily support a credit for services of its attorney rendered in attending all depositions. And, in any case, the insurer may challenge the fee on the ground that it is unconscionable or unreasonable. *See* The Maryland Lawyers' Rules of Professional Conduct, Rule 1.5. *See also Hubbard v. Livingston Fire Pro.*, 289 Md. 581, 582 n. 1, 426 A.2d 901 (1981).

We do not today limit the absolute right of the insurer to intervene in third party litigation. We address only the question of when, and under what circumstances, the attorney's fees the insurer thereby incurs may be credited against that portion of the claimant's attorney's fees allocated to it by statute. We make no attempt to list all of the circumstances that will justify the allowance of such a credit. Rather, we have offered examples of the circumstances that may justify departure from the usual rule that a proportionate part of the fees of the claimant's attorney who initiated and prosecuted a third party action will be deducted from the insurer's recovery.

In *Thomas* there was no apparent necessity for the active participation of the insurer's attorney. There, although the insurer's attorney participated to some extent in the trial, the insurer was not entitled to a credit based on the value of his services. In *McCally,* on the other hand, some credit was thought to be appropriate because the claimant actively sought the assistance of the carrier's representative, and because the claimant conceded that some allocation of the fee was appropriate.

### III.

In the case before us, all was well for a time. Counsel for the claimant, who was an experienced and able practitioner in the fields of worker's compensation and tort law, and who was apparently known to the insurer and its attorneys, assisted the claimant in securing worker's compensation benefits and then pursued the third party claim.

The insurer had placed the tort-feasor's liability insurance carrier on notice of its statutory lien for benefits, and was aware that the claimant's attorney intended to pursue the third party claim. Trouble developed when claimant's counsel would not respond to the insurer's repeated and courteous requests, made by the insurer's counsel, for information concerning the claim. It was not until a month before trial, when counsel for the tort-feasor was insisting that the compensation insurer be named as an additional plaintiff, that claimant's counsel provided any significant information to the insurer. At that time, with the consent of the insurer's counsel, the attorney for the claimant filed an amended complaint naming the insurer as a use plaintiff, and entering the appearance of the insurer's attorney.

■ It is readily apparent from the testimony of the several attorneys who testified before Judge Hinkel that: 1) the insurer was more than willing to allow claimant's counsel to prosecute the third party claim to a conclusion, provided the claimant's attorney would keep the insurer advised of the progress of the case; and, 2) claimant's counsel resented the "interference" of the insurer in what he regarded as his client's claim, and he was intractable in his refusal to provide copies of the pleadings or any meaningful information. Under those circumstances, and considering that the insurer's lien was then in excess of $50,000, it was reasonable for the insurer to insist on intervention and participation by its own attorney. To the extent subsequent participation of the insurer's attorney was reasonably required to protect the insurer's interests, the insurer was entitled to a credit against the amount of the claimant's attorney's fees allocable to its share of the recovery, and Judge Hinkel did not err in so finding.

Judge Hinkel correctly interpreted Art. 101, § 58 to require an apportionment of the overall attorney's fees properly charged against the recovery. In this case, the fee agreed to by the claimant and his attorney was a contingent fee of one-third of the amount recovered. That fee was reasonable in this case, and no one has suggested the

contrary. The gross fee was therefore $58,333, one-third of the recovery of $175,000. The compensation lien comprised 29 percent of the recovery, and thus, following the dictates of § 58, the unadjusted allocation of attorney's fees to the insurer's portion of the recovery was 29 percent of the $58,333, or $16,916.57. In the absence of any need to adjust it, the apportioned amount of the fee, together with an amount equal to 29 percent of the reasonable and required costs and expenses of the claim, should have been deducted from the insurer's claim of $58,333, and the balance paid to the insurer. This was not the usual case, however. A further adjustment of the apportioned attorney's fees of $16,916.57 was required to reflect the reasonable value of the services required of the insurer's attorney. The claimant does not challenge the amount of that adjustment, $2,916.65—he contends only that the circumstances did not warrant any adjustment following apportionment. We have found to the contrary, and we affirm.

JUDGMENT AFFIRMED, WITH COSTS.