50 A.3d 1137

## BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.

v.

## Stephanie Lynn MARKS–SLOAN.

### No. 117, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 21, 2012.

4

**6**

8

Abbey G. Hairston (Sarah M. Burton of Thatcher Law Firm, LLC, Greenbelt, MD), on brief, for Petitioners.

Michael J. Winkelman (McCarthy, Winkelman & Morrow, LLP, Bowie, MD), on brief, for Respondent.

Leslie R. Stellman, Esquire, Hodes, Pessin & Katz, P.A., Towson, MD, Stephen C. Bounds, Esquire, Director of Legal and Policy Services, Maryland Association of Boards of Education, Annapolis, MD, for Amicus Curiae brief of Maryland Association of Boards of Education in Support of the Appellants.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

In the instant case, Stephanie Marks–Sloan (Respondent) was injured in an automobile collision involving Norman Iglehart on September 26, 2007, while both were acting within the scope of their employment with the Board of Education of Prince George's County (the Board). In the discussion that follows, we will refer to Mr. Iglehart and the Board, collectively, as Petitioners.[1] Respondent thereafter applied for workers' compensation benefits. The Workers' Compensation Commission awarded her compensation for medical expenses, temporary total disability, and attorney's fees after determining that Respondent had sustained an accidental injury arising out of and in the course of her employment. The Board, as a self-insured employer, began making the required payments to Respondent.

Subsequently, Respondent filed a Complaint in the Circuit Court for Prince George's County, naming Mr. Iglehart, the Board, and Prince George's County (the County) as defendants. In her Complaint, Respondent sought damages for her injuries as a result of Mr. Iglehart's alleged ordinary negligence and the respondeat superior liability of the Board and the County. The parties ultimately stipulated to the dismissal of the County as a party to the case. Petitioners, as the remaining defendants in the tort suit, filed a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment. In their Motion, Petitioners contended that, pursuant to Md.Code (1957, 2008 Repl.Vol.), § 9–509 of the Labor and Employment Article (LE), Respondent's exclusive remedy against the Board, her employer, was through the Workers' Compensation Act. According to Petitioners, because Respondent had received an award from the Workers' Compensation Commission, she was prohibited from pursuing a tort suit against the Board. In addition, Petitioners claimed

---

1. Although the trial court's Amended Order, issued on June 4, 2010, included a stipulation by the parties that Mr. Iglehart was dismissed from the action, the judgment of the Circuit Court as entered on the record is against both Mr. Iglehart and the Board.

in their Motion that Md.Code (1990, 2006 Repl.Vol.), § 5–518 of the Courts and Judicial Proceedings Article (CJ) provided immunity for Mr. Iglehart as a county board of education employee acting within the scope of his employment and without malice or gross negligence; thus, Petitioners asserted that the Complaint failed to state a claim upon which relief could be granted.

After consideration of Petitioners' Motion, and Respondent's opposition thereto, the trial judge denied the Motion with regard to Mr. Iglehart but granted the Motion with regard to the Board. The judge concluded that the Board was dismissed; however, he directed that it "remain a party in this case for the purposes of any potential indemnification [of Mr. Iglehart] required under Maryland Courts and Judicial Proceedings Article § 5–518(h) (2006)." Following a series of motions and responses filed by the parties, the trial judge issued an Order entering judgment on behalf of Respondent in the amount of $100,000 against the Board.[2] The judge's Order also indicated that the parties agreed that Petitioners had not waived their rights to pursue post-judgment relief or to file a timely appeal. In an attempt to further clarify the respective positions of the parties in the suit, the judge later issued an Amended Order, which ordered that judgment be entered against Mr. Iglehart and the Board and added the stipulation that Mr. Iglehart was dismissed from the action.

The trial judge denied Petitioners' Motion to Alter or Amend Judgment. Petitioners then noted a timely appeal to the Court of Special Appeals. *Bd. of Educ. v. Marks–Sloan,* 202 Md.App. 59, 30 A.3d 1026 (2011). The intermediate appellate court affirmed the judgment of the trial court, concluding that, similar to the Local Government Tort Claims Act, CJ § 5–518 contains an indemnification provision, rather than an immunity provision, that allows a tort suit to be brought against Mr. Iglehart and requires that the Board be

---

**2.** Pursuant to Md.Code (1990, 2006 Repl.Vol.), § 5–518(c) of the Courts and Judicial Proceedings Article, the parties agree that Board of Education has sovereign immunity for damages in excess of $100,000.

joined as a party. *Marks–Sloan*, 202 Md.App. at 69–70, 30 A.3d at 1031–32. The Court of Special Appeals interpreted CJ § 5–518 as requiring the Board to indemnify Mr. Iglehart by paying any damages entered against him in the negligence suit. *Marks–Sloan*, 202 Md.App. at 70, 30 A.3d at 1032. In addition, the Court of Special Appeals concluded that the Legislature's decision to require the Board to indemnify Mr. Iglehart does not violate the exclusivity rule in the Workers' Compensation Act. *Marks–Sloan*, 202 Md.App. at 67–68, 30 A.3d at 1031.

We granted Petitioners' petition for writ of *certiorari, Bd. of Educ. v. Marks–Sloan*, 424 Md. 628, 37 A.3d 317 (2012), to address the following issues:

1. Can an employee of a county board of education who receives workers' compensation benefits for injuries sustained in the course and scope of her employment circumvent the exclusivity rule and sue her co-worker in a negligence action?

2. Does CJ § 5–518 grant employees of county boards of education immunity from suit and judgment absent malice and gross negligence?

3. Did the Court of Special Appeals improperly rely upon the Maryland Tort Claims Act and the Local Government Tort Claims Act to determine that an employee of a county board of education may be sued in his individual capacity in a negligence action?

We shall affirm the judgment of the Court of Special Appeals and hold that CJ § 5–518 contains an indemnification provision that allows an injured party to bring a tort suit against the county board of education employee who caused the injury. In accordance with the statute, the injured party must join the employer county board of education as a defendant in the action. Any damages awarded may be executed and levied against the county board of education only and may not be collected from the negligent employee. Furthermore, we hold that, as it pertains to the case *sub judice*, this statutory scheme does not violate the exclusivity rule in LE

§ 9–509, which states that an injured employee's sole remedy against his or her employer for an accidental personal injury sustained during the course of employment is through the Workers' Compensation Act. The purpose of the exclusivity rule is to ensure swift compensation to the injured employee and to prevent a double recovery, through a workers' compensation award and a tort judgment, from an employer by an injured employee.

The Workers' Compensation Act, Md.Code (1957, 2008 Repl.Vol.), § 9–902 of the Labor and Employment Article, provides that in a suit against a third party tortfeasor, brought by an employer or injured employee,[3] the employer is entitled to reimbursement in the amount of any workers' compensation paid or awarded to the injured employee. Thus, in a situation where, as here, an injured county board of education employee brings a suit in tort against a negligent co-employee, and the county board of education is joined for purposes of indemnification, the county board may set off the amount of workers' compensation paid or awarded to the injured employee from the amount of damages awarded in the tort action. Such a procedure satisfies the letter and spirit of the statutory provisions at issue by protecting the county board of education from the unfairness of double recovery, while allowing the injured employee to obtain his or her entitlement to compensation for workplace injuries.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the instant case are relatively simple and undisputed by the parties. On September 26, 2007, Respondent, while acting in the course and scope of her employment with the Board, was driving a motorcycle on the access road

---

**3.** We note that LE § 9–902 allows for a suit in tort to be brought against a third party tortfeasor by the injured employee, the employer, the employer's insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund. Because the Board of Education of Prince George's County is a self-insured employer, we limit our discussion to the rights and responsibilities of employees and self-insured employers.

from a school bus lot in Prince George's County. At the same time, Mr. Iglehart, also acting in the course and scope of his employment with the Board, was operating a school bus and traveling in the opposite direction on the access road. Due to Mr. Iglehart's negligent operation of the bus, Respondent was forced off the road and suffered injuries.

Respondent filed a claim with the Workers' Compensation Commission for injuries she sustained as a result of the incident. The Commission determined that Respondent had sustained an accidental injury arising out of and in the course of her employment with the Board. On February 25, 2008, the Commission awarded Respondent compensation for medical expenses, temporary total disability, and attorney's fees. At the time of the incident, the Board was a self-insured employer, and it began paying compensation to Respondent in accordance with the Commission's award.

On October 31, 2009, Respondent filed a Complaint in the Circuit Court for Prince George's County, naming Mr. Iglehart, the Board, and Prince George's County as defendants. In her Complaint, Respondent sought damages based on Mr. Iglehart's negligence and the respondeat superior liability of the Board and the County. Ultimately, the parties stipulated to the dismissal of the County as a party to the suit. Petitioners, the remaining defendants, filed a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment. With regard to the claims against Mr. Iglehart, Petitioners asserted that CJ § 5–518(e) provided immunity for Mr. Iglehart as a county board of education employee acting within the scope of his employment, without malice or gross negligence. Thus, Petitioners claimed that suit could not be brought against Mr. Iglehart under the circumstances alleged by Respondent. With regard to the claims against the Board, Petitioners contended that LE § 9–509 prohibited Respondent from pursuing relief from the Board, her employer, after she sought and received an award from the Commission under the Workers' Compensation Act. Therefore, according to Petitioners, they were entitled to have the Complaint dismissed or, in the alternative, to have a

judgment entered in their favor as a matter of law. In her opposition to Petitioners' Motion, Respondent argued that Maryland law allowed her to pursue a tort claim against Mr. Iglehart, her co-employee. In addition, Respondent asserted that the Board's statutory requirement to indemnify its employee in a tort suit does not preclude a negligence action against the employee who caused the injury and does not violate the principles of the exclusivity rule for workers' compensation benefits.

After considering Petitioners' Motion and Respondent's opposition thereto, the trial judge denied the Motion as to Mr. Iglehart and granted the Motion as to the Board. The trial judge dismissed the Board but required that it remain a party in the case for "purposes of any potential indemnification[.]" Petitioners thereafter filed a Motion for Leave to Refile Motion for Summary Judgment and a Motion for Summary Judgment, based upon the same arguments it had previously submitted, and the trial judge denied both motions. Petitioners then filed a Motion for Declaratory Judgment. In their Motion, Petitioners stipulated that Respondent and Mr. Iglehart were employees acting within the scope of their employment with the Board at the time of the motor vehicle collision. Petitioners requested that the trial court issue an order dismissing the suit with prejudice and declaring that county boards of education cannot be held liable for the tortious conduct of their employees in a situation where the injured plaintiff co-employee has already received workers' compensation benefits from the county board of education as a result of the same incident. Petitioners also contemporaneously filed a Motion to Stay Trial. The trial judge issued an Order denying Petitioners' Motion to Stay Trial and ruling that Petitioners' Motion for Declaratory Judgment could be resolved after the trial, if necessary.

The trial judge issued an Order on April 23, 2010, entering judgment on behalf of Respondent in the amount of $100,000 against the Board, pursuant to CJ § 5–518. The Order also indicated that the parties agreed that Petitioners would withdraw their Motion for Declaratory Judgment, without preju-

dice, and that Petitioners had not waived their rights to pursue post-judgment relief or to file a timely appeal. On June 4, 2010, the trial judge issued an Amended Order that entered judgment against Mr. Iglehart and the Board and also included a stipulation by the parties to dismiss Mr. Iglehart as a party to the action. Petitioners filed a Motion to Alter or Amend Judgment, requesting that the judge enter judgment against the Board only, which the trial judge denied.

Petitioners noted a timely appeal to the Court of Special Appeals. *Bd. of Educ. v. Marks–Sloan*, 202 Md.App. 59, 30 A.3d 1026 (2011). The intermediate appellate court reviewed the questions posed by Petitioners as issues of statutory construction. *Marks–Sloan*, 202 Md.App. at 61, 30 A.3d at 1027. To interpret the provisions of CJ § 5–518, the Court of Special Appeals turned to the Maryland Tort Claims Act, Md.Code (2009 Repl.Vol.), § 12–101, *et seq.* of the State Government Article (MTCA), and the Local Government Tort Claims Act, Md.Code (1987, 2011 Supp.), § 5–301, *et seq.* of the Courts and Judicial Proceedings Article (LGTCA), for guidance. *Marks–Sloan*, 202 Md.App. at 65, 30 A.3d at 1029. Interpreting the MTCA as an immunity statute and the LGTCA as an indemnification statute, the intermediate appellate court determined that the statutory scheme in CJ § 5–518 was analogous to the LGTCA. *Marks–Sloan*, 202 Md.App. at 66–70, 30 A.3d at 1029–32. According to the Court of Special Appeals, the LGTCA includes similar language to CJ § 5–518, providing that a judgment may be entered against an employee, but the employer bears the responsibility for satisfying the judgment. *Marks–Sloan*, 202 Md.App. at 66, 30 A.3d at 1029–30. In contrast, under the MTCA, claims must be brought directly against the State. *Marks–Sloan*, 202 Md.App. at 67, 30 A.3d at 1030. The court reasoned that, under Maryland law, Respondent was entitled to bring a tort suit against her co-employee, Mr. Iglehart, even though she was prohibited from bringing a similar suit against her employer, the Board. *Id.* With regard to the statutory requirement that the Board indemnify its employee in a negligence suit, the intermediate appellate court concluded that "the exclusivity of the workers'

18

compensation remedy does not prevent a contractual obligation to indemnify. Similarly, we see no impediment to the legislature's ability to provide for indemnification." *Marks–Sloan*, 202 Md.App. at 67–68, 30 A.3d at 1031. Thus, the Court of Special Appeals affirmed the judgment of the trial court. *Marks–Sloan*, 202 Md.App. at 70, 30 A.3d at 1032.

## STANDARD OF REVIEW

The facts leading to Respondent's injury, as stated above, are undisputed by the parties. The parties agree that Mr. Iglehart and Respondent were both acting within the scope of their employment with the Board at the time of the incident. The parties also agree that Mr. Iglehart was not acting with malice or gross negligence in causing Respondent's injuries. It is not disputed that the Board has statutory immunity, pursuant to CJ § 5–518(c), for damages in excess of $100,000. In addition, neither party has asserted that Respondent was entitled to bring suit against the Board directly, as the exclusivity rule prohibits an injured employee from instituting a tort suit against an employer who has complied with the provisions of the Workers' Compensation Act and has not acted to deliberately cause the injury. Therefore, the only issues before us involve questions of statutory interpretation.

■ The proper interpretation of a statutory provision is a question of law, and, thus, we review determinations by lower courts involving statutory construction non-deferentially. *Moore v. State*, 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005); *Collins v. State*, 383 Md. 684, 688, 861 A.2d 727, 730 (2004). With respect to statutory construction, we stated in *Bd. of Cnty. Comm'rs v. Marcas, L.L.C.*, 415 Md. 676, 4 A.3d 946 (2010):

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Marcas,* 415 Md. at 685–86, 4 A.3d at 951–52 (quoting *Lockshin v. Semsker,* 412 Md. 257, 274–76, 987 A.2d 18, 28–29 (2010)).

Regarding the Workers' Compensation Act specifically, we have recognized that the Act is a remedial statute. *Montgomery Cnty. v. Deibler,* 423 Md. 54, 61, 31 A.3d 191, 195 (2011); *Design Kitchen & Baths v. Lagos,* 388 Md. 718, 724, 882 A.2d 817, 821 (2005). This Court has held that the Act must be " 'construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Deibler,* 423 Md. at 61, 31 A.3d at 195 (quoting *Lagos,* 388 Md. at 724, 882 A.2d at 821); *Harris v. Bd. of Educ.,* 375 Md. 21, 57, 825 A.2d 365, 387 (2003). Importantly, we have also noted that, in construing the provisions in the Act, we "may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail." *Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 473, 784 A.2d 569, 573 (2001).

## DISCUSSION

### I. Courts and Judicial Proceedings Article § 5–518

Petitioners and Respondent disagree over the proper interpretation of Courts and Judicial Proceedings Article § 5–518. The statute, on its face, is ambiguous with regard to whether it provides for indemnification or immunity for county board of education employees. Thus, we look to the legislative history of the statute to determine the Legislature's intent. We also consider the statutory scheme as a whole so that our interpretation of a particular provision, in isolation, is not irrational or illogical. Additionally, similar to the analysis conducted by the Court of Special Appeals, we find it helpful to compare CJ § 5–518 to the MTCA and the LGTCA. Viewing the statute in this manner, we conclude that CJ § 5–518 contains an indemnification provision that allows for a negligence action to be brought against a county board of education employee and for a judgment to be entered against that negligent employee; however, the statute expressly provides

the circumstances under which an employee may not be held personally liable for damages. The statute also requires the county board of education to be joined as a party in the suit to satisfy any judgment entered against the employee.

Petitioners contend that CJ § 5-518 is an immunity statute that precludes any tort suit against a county board of education employee acting within the course and scope of employment, without malice or gross negligence. According to Petitioners, the purpose of CJ § 5-518 is "to limit liability for simple negligence solely against a county board of education [employee] and the lower court erred in not dismissing Mr. Iglehart with prejudice." Petitioners assert that if the Legislature had intended to provide indemnity for county board of education employees, as opposed to immunity, there would be a clear indication of such an intention in the statute; in Petitioners' view, because there is no express mention of "indemnification" in the statute, the Legislature clearly intended that county board of education employees receive immunity for their negligent acts committed in the course and scope of their employment. Additionally, Petitioners claim that the language and legislative history of Education Article § 4-106 support their position that CJ § 5-518(e), offering protection for county board of education employees, is an immunity provision. Petitioners also claim that the Court of Special Appeals improperly relied upon the MTCA and the LGTCA in its interpretation of CJ § 5-518, stating that "[t]he appellate court's focus on statutory provisions that have no application to county boards of education to support its conclusion was neither necessary nor appropriate."

In contrast to Petitioners' assertions, Respondent contends that CJ § 5-518 contains an indemnification provision that requires a county board of education to be joined in an action alleging negligence of its employee acting in the course and scope of employment. According to Respondent, the reason for requiring a county board of education to be joined is to secure indemnification of the employee against any damages awarded to the injured party in the same action. Respondent claims that an interpretation of CJ § 5-518 allowing for

complete immunity from liability for county board of education employees is contrary to the plain language and meaning of the statute. Respondent reads the statute to mean that "although County Board employees can be held liable in tort for their negligent acts, the County Board of Education is responsible for the payment of such awards." In other words, "the County [Board of Education] shall be joined as [it is] the party who will be responsible for the payment of any judgment levied against an employee who commits a tortious act without malice and gross negligence."

Several statutory provisions in the Education Article of the Maryland Code, discussing protection for county boards of education and county board employees, direct us to Courts and Judicial Proceedings Article § 5–518. Maryland Code (1957, 2008 Repl.Vol.), § 4–105(d) of the Education Article provides, "[a] county board shall have the immunity from liability described under § 5–518 of the Courts and Judicial Proceedings Article." Similarly, Md.Code (1985, 2008 Repl. Vol.), § 4–106(a) of the Education Article provides, "[a] county board employee shall have the immunity from liability described under § 5–518 of the Courts Article."

Md.Code (1990, 2006 Repl.Vol.), § 5–518 of the Courts and Judicial Proceedings Article provides:

(a) (1) In this section the following words have the meanings indicated.

(2) "Compensation" does not include actual and necessary expenses that are incurred by a volunteer in connection with the services provided or duties performed by the volunteer for a county board of education, and that are reimbursed to the volunteer or otherwise paid.

(3) "County board employee" means:

(i) Any employee whose compensation is paid in whole or in part by a county board of education;

or

(ii) A student teacher.

(4) "County board member" means a duly elected or appointed member of a county board of education.

(5) "Volunteer" means an individual who, at the request of the county board and under its control and direction, provides services or performs duties for the county board without compensation.

(b) A county board of education, described under Title 4, Subtitle 1 of the Education Article, may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured or a member of a pool described under § 4–105(c)(1)(ii) of the Education Article, above $100,000.

(c) A county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less.

(d) (1) The county board shall be joined as a party to an action against a county board employee, county board member, or volunteer that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment, by the county board member within the scope of the member's authority, or by the volunteer within the scope of the volunteer's services or duties.

(2) The issue of whether the county board employee acted within the scope of employment may be litigated separately.

(3) The issue of whether the county board member acted within the scope of the member's authority may be litigated separately.

(4) The issue of whether the volunteer acted within the scope of the volunteer's services or duties may be litigated separately.

(e) A county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, includ-

ing damages that exceed the limitation on the county board's liability.

(f) (1) A county board member, acting within the scope of the member's authority, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitation on the county board's liability.

(2) In addition to the immunity provided under paragraph (1) of this subsection, a county board member is immune as an individual from civil liability for an act or omission if the member is acting:

(i) Within the scope of the member's authority;

(ii) Without malice; and

(iii) In a discretionary capacity.

(g) (1) The provisions of this subsection apply only to a volunteer.

(2) A volunteer who acts within the scope of the volunteer's services or duties is not personally liable for damages resulting from a tortious act or omission beyond the limits of any personal insurance the volunteer may have unless:

(i) The damages were the result of the volunteer's negligent operation of a motor vehicle; or

(ii) The damages were the result of the volunteer's willful, wanton, malicious, reckless, or grossly negligent act or omission.

(3) The limitations on liability contained in this subsection may not be construed or applied to affect any immunities from civil liability or defenses established by any other provision of the Code or available at common law to which the volunteer may be entitled.

(h) Except as provided in subsection (e), (f), or (g) of this section, a judgment in tort for damages against a county board employee acting within the scope of employment, a

county board member acting within the scope of the member's authority, or a volunteer acting within the scope of the volunteer's services or duties shall be levied against the county board only and may not be executed against the county board employee, the county board member, or the volunteer personally.

The statutory provision at issue, namely Courts and Judicial Proceedings Article § 5–518, is ambiguous with regard to the protection given to county board of education employees. A plain reading of the statute does not clarify, for us, the issue of whether the Legislature intended to afford immunity or indemnity to county board of education employees. Therefore, to effectuate the intent of the Legislature, we look to the legislative history of this statutory scheme. We also read the statute as a whole, and in conjunction with the relevant provisions in the Education Article, so that our interpretation is not inconsistent or illogical.

In 1978, Senate Bill 222 was signed into law, creating the Education Article (ED) of the Maryland Code.1978 Md. Laws, ch. 22. When originally enacted, ED § 4–105, governing the ability of County Boards of Education to raise the defense of sovereign immunity, included substantially the same language as the current statute. 1978 Md. Laws, ch. 22. In 1985, House Bill 940 created ED § 4–105.1, which contained provisions regarding protection for county board of education employees. 1985 Md. Laws, ch. 666. House Bill 940 contained language in the purpose clause indicating the following: "requiring a county board of education to be joined in any tort claim against a county board of education employee; providing that certain issues may be tried separately in certain actions against a county board employee; providing that a county board employee is not liable for damages in certain situations; and generally relating to the tortious acts or omissions of employees of county boards of education." 1985 Md. Laws, ch. 666. The language that appeared in former ED § 4–105.1 is the functional equivalent of the portion of current CJ § 5–518 addressing protection for county board of education employees.

A letter submitted by Prince George's County Public Schools in support of House Bill 940 stated, "This bill seeks to provide a needed protection for employees of public school systems by bringing them under the Board's limit of liability provision." A letter submitted by The Mayor's Task Force for Liaison with the General Assembly claimed, "The essence of this bill is to provide indemnification of employees of county boards against damages for tort liability provided that the employee is acting within the scope of his employment and without malice or gross negligence." Montgomery County submitted a statement in support of House Bill 940 expressing concerns about exposing local boards of education to liability for damages in excess of $100,000. The statement posited that "it was the intention of the General Assembly that the entity, Board of Education[,] and its employees both be covered by the $100,000 limitation of liability." In its statement, Montgomery County representatives asserted that the statute's "policy of indemnification" for county board of education employees "is good public policy and should not be discouraged." In response to the statement, House Bill 940 was amended to include a provision that the statute did not waive sovereign immunity for local boards of education above $100,000. A Summary of Committee Report drafted by the Senate Judicial Proceedings Committee indicated that House Bill 940 was proposed to address the issue of board of education employees who are "fully exposed to tort liability without limit." The Summary included the following language with regard to legislative intent behind the Bill: "The intent of House Bill 940 is to provide a needed protection for employees of public school systems by bringing them under the Board's limit of liability provision and consolidating the employees['] position with that of the present position of the Boards of Education." A Bill Analysis by the Committee Report System noted that House Bill 940 "[p]rohibits a judgment in tort from being executed against the county employee individually."

In 1990, House Bill 206 was signed into law, creating CJ § 5–353. 1990 Md. Laws, ch. 546. Thereafter, much of the language in ED § 4–105.1 was moved to CJ § 5–353. In 1996,

Senate Bill 11 was signed into law and redesignated ED § 4–105.1 as ED § 4–106. 1996 Md. Laws, ch. 10. In 1997, Senate Bill 114 renumbered CJ § 5–353 to its present codification at CJ § 5–518. 1997 Md. Laws, ch. 14. Today, ED §§ 4–105 and 4–106 direct the reader to CJ § 5–518 for an explanation of the protection given to county boards of education and county board of education employees.

The intent of the Legislature in enacting ED § 4–106 and CJ § 5–518 was to offer some protection from tort liability to county board of education employees. When these statutory provisions are read together, in their entirety, taking into consideration legislative history, it becomes clearer that the protection given to county board employees is in the form of indemnification, not complete immunity from liability. ED §§ 4–105 and 4–106 contain nearly identical language, indicating that CJ § 5–518 describes the "immunity from liability" given to county boards of education and county board employees, respectively. The immunity given to county boards of education under CJ § 5–518(c) is an *immunity from damages* in excess of $100,000. The similar language and structure of ED § 4–105 and ED § 4–106 lead us to conclude that the protection given to county board of education employees is also an immunity from damages, which is distinct from the concept of complete immunity from liability.

Petitioners argue that the protection given to county board employees is complete immunity that does not allow for a tort suit to be brought against a county board employee acting within the scope of employment without malice or gross negligence. In Petitioners' view, CJ § 5–518 precludes not just recovery from such an employee, but the initiation of any tort action. The language in the statute does not support Petitioners' interpretation. Section 5–518(e) provides that "[a] county board employee acting within the scope of employment, without malice and gross negligence, is *not personally liable for damages* resulting from a tortious act or omission[.]" CJ § 5–518(e) (emphasis added). Section 5–518(h) discusses the process for entering "a judgment in tort for damages against a

county board employee acting within the scope of employment[.]" CJ § 5–518(h). Subsection (h) further provides that such a judgment "shall be levied against the county board only and may not be executed against the county board employee[.]"

The statute does not define the terms "levied" and "executed[.]" To determine the ordinary meanings of those words, we find it helpful to consult their dictionary definitions. *See Montgomery Cnty. v. Deibler*, 423 Md. 54, 67, 31 A.3d 191, 198 (2011) (determining that "[a]lthough dictionary definitions do not provide dispositive resolutions of the meaning of statutory terms, it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning" (internal quotations omitted)). *Black's Law Dictionary* defines "levy" as "[t]o take or seize property in execution of a judgment[.]" *Black's Law Dictionary* 927 (8th ed. 2004). The term "execute" is defined as "[t]o enforce and collect on (a monetary judgment)[.]" *Black's Law Dictionary* 609 (8th ed. 2004). The import of these words, read in connection with CJ § 5–518(h), is that a judgment may be entered against a county board employee, but the collection of that judgment may be against the county board only. That interpretation is consistent with CJ § 5–518(e), which indicates that a county board employee is not personally liable for damages in tort.

Furthermore, CJ § 5–518(d) requires that a county board of education must be joined as a party to an action against a county board employee who has committed a tortious act or omission within the scope of his or her employment. If we interpret the statute as Petitioners suggest, a negligence action could not be brought against a county board employee, as the employee would be entitled to complete immunity from liability. It would be irrational for us to conclude that the statute requires a county board of education to be joined as a party to a suit that could never be filed. It is a more logical interpretation of the statutory provisions at issue to conclude that the statute allows a suit in tort to be brought against a county board employee, and if the employee

was acting in the scope of his or her employment without malice or gross negligence, the county board must be joined as a party. A judgment may then be entered against both the employee and the county board of education, but the judgment may be levied and executed against the county board of education only.

We also find it useful to compare CJ § 5–518 to the MTCA and the LGTCA for guidance in the proper interpretation of the statutory provisions at issue. Prior to the enactment of the MTCA, " 'the State and its agencies could not be sued unless the General Assembly authorized suit and enabled State agencies to obtain funds necessary to satisfy judgments.' " *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 711, 990 A.2d 1048, 1059 (2010) (quoting *Condon v. State*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993)). In 1981, the Legislature enacted the MTCA with the purpose of "ensur[ing] that an individual who is injured by the tortious conduct of the State or state employees has a remedy for his or her injury." *Proctor*, 412 Md. at 710–11, 990 A.2d at 1059 (citation omitted). The MTCA was intended to serve as a " 'gap-filler' to waive the immunity of State agencies in tort when no other statute expressly waived the agency's immunity." *Proctor*, 412 Md. at 712, 990 A.2d at 1060.

 Md.Code (1985, 2009 Repl.Vol.), § 12–105 of the State Government Article provides that "[s]tate personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article." Md. Code (1990, 2006 Repl.Vol.), § 5–522(b) of the Courts and Judicial Proceedings Article provides:

State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

In general, the MTCA "provides statutory immunity 'to insulate State employees generally from tort liability if their actions are within the scope of employment and without malice or gross negligence.'" *Higginbotham v. Pub. Serv. Comm'n,* 412 Md. 112, 130–31, 985 A.2d 1183, 1193 (2009) (quoting *Lee v. Cline,* 384 Md. 245, 261, 863 A.2d 297, 307 (2004)). Thus, "[w]here state personnel are negligent, the statute generally waives sovereign or governmental immunity and substitutes the liability of the State for the liability of the state employee committing the tort." *Menefee v. State,* 417 Md. 740, 752, 12 A.3d 153, 160 (2011) (internal quotation omitted). The immunity provided to State employees under the MTCA also encompasses immunity for constitutional torts and intentional torts. *Higginbotham,* 412 Md. at 131, 985 A.2d at 1193.

Prior to enactment of the LGTCA, "local governments enjoyed immunity from tort liability only with respect to non-constitutional torts based on activity classified as 'governmental,' and such immunity could be waived by the General Assembly or local enactments." *Rios v. Montgomery Cnty.,* 386 Md. 104, 125, 872 A.2d 1, 13 (2005). In 1987, the General Assembly enacted the LGTCA, 1987 Md. Laws, ch. 594, with the purpose of "afford[ing] a remedy to those injured by acts of local government officers and employees, while 'ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts.'" *Rios,* 386 Md. at 125–26, 872 A.2d at 13 (quoting *Ashton v. Brown,* 339 Md. 70, 108, 660 A.2d 447, 466 (1995)). In general, "[t]he LGTCA limits liability, provides for indemnification, and establishes procedural requirements relating to suits against officials of local government employees." *Houghton v. Forrest,* 412 Md. 578, 591, 989 A.2d 223, 231 (2010). Md.Code (1987, 2006 Repl.Vol.), § 5–302(b) of the Courts and Judicial Proceedings Article provides:

(1) Except as provided in paragraph (2) of this subsection, a person may not execute against an employee on a judgment rendered for tortious acts or omissions committed by the employee within the scope of employment with a local government.

(2) (i) An employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice.

(ii) In such circumstances the judgment may be executed against the employee and the local government may seek indemnification for any sums it is required to pay under § 5–303(b)(1) of this subtitle.

Md.Code (1987, 2011 Supp.), § 5–303(c)(2)(i) of the Courts and Judicial Proceedings Article provides that "a local government may indemnify an employee for a judgment for punitive damages entered against the employee."

 Thus, "the General Assembly has waived the local government's ability to avoid responsibility for the defense and indemnification of employees under the LGTCA[.]" *Rios,* 386 Md. at 137, 872 A.2d at 20. The LGTCA "legislatively permits plaintiffs to enforce judgments obtained from suit against the employee against the local government." *Rios,* 386 Md. at 139, 872 A.2d at 21. In contrast to the complete immunity from suit given to State personnel under the MTCA, local government employees are granted only an immunity from damages under the LGTCA. *Smith v. Danielczyk,* 400 Md. 98, 129–30, 928 A.2d 795, 814 (2007). Thus, local government employees "may be sued, and judgments may be entered against them." *Smith,* 400 Md. at 130, 928 A.2d at 814. A plaintiff who recovers in a suit against a negligent local government employee may collect the amount of any judgment from the local government entity only, and not from the employee individually. *Id.* (explaining that "unless the employee is found to have acted with actual malice, the plaintiff may not execute on a judgment recovered against the employee, but, rather, subject to certain limits, the local government is liable on the judgment" (internal citation omitted)).

 In our view, the statutory language in CJ § 5–518 is more analogous to the language governing the protection of local government employees under the LGTCA. Similar to the protection afforded to local government employees under the LGTCA, we conclude that county board of education

employees are entitled to indemnification from tort damages by county boards under CJ § 5–518. Tort suits may be brought against county board employees and judgments may be entered against them. The county board of education must be joined as a party to the tort action in situations where the employee has acted within the scope of employment without malice or gross negligence. If a judgment is entered against the employee and the county board, the county board alone is responsible for satisfying the judgment, as county board employees may not be held personally liable in tort for damages. Therefore, it was not improper, in the case *sub judice,* for Respondent to bring a negligence action against Mr. Iglehart and to join the Board as a party, in accordance with CJ § 5–518. Pursuant to the statutory indemnification afforded to Mr. Iglehart under CJ § 5–518, any judgment entered on behalf of Respondent may be levied and executed against the Board only, and not against Mr. Iglehart individually.

Petitioners express concern that the comparison made by the Court of Special Appeals to the MTCA and the LGTCA was improper because the Board is clearly not covered by the LGTCA. We note that, by analogizing CJ § 5–518 to the LGTCA, the intermediate appellate court was not suggesting that the LGTCA is applicable to the circumstances of the instant case. Rather, in light of the ambiguous text and legislative history for the statutory provisions at issue, the Court of Special Appeals sought guidance from other liability protection statutes. As we have done in our analysis, the intermediate appellate court merely located and analyzed similar language in the LGTCA to conclude that the General Assembly likely intended that CJ § 5–518 be construed as an indemnification statute, as opposed to an immunity statute. We see no problem with this approach to statutory interpretation. *See Deibler,* 423 Md. at 69, 31 A.3d at 200 (interpreting the meaning of the term "wage" in Labor and Employment Article § 9–615 "by examining other instances in the Maryland Code when the Legislature has defined 'wage' ").

## II. Workers' Compensation Act Exclusivity Rule

 We next determine whether mandating that the Board be joined as a party to the negligence suit against Mr. Iglehart and requiring the Board to satisfy any judgment entered against Mr. Iglehart violates the exclusivity rule of the Workers' Compensation Act. The parties do not dispute that the exclusivity rule prohibits Respondent from instituting a tort action against the Board directly, in light of her award from the Workers' Compensation Commission. The Workers' Compensation Act, however, allows an injured employee, pursuant to LE § 9–902, to institute a tort action against a third party tortfeasor who caused the injury. If the injured employee receives a tort judgment, the employer is entitled to reimbursement for any workers' compensation paid or awarded to the employee as of the date of the tort judgment. In accordance with Maryland law, a co-employee is considered a third party against whom a suit for tort damages may be brought; thus, Respondent was permitted to bring a negligence action against Mr. Iglehart, in accordance with LE § 9–902.

 With regard to the impact of the exclusivity rule, we note that an employer who has complied with the provisions of the Workers' Compensation Act is not prohibited from entering into an indemnification contract with the third party tortfeasor; similarly, we conclude that the statutory indemnification required of the Board under CJ § 5–518 does not violate the provisions of the exclusivity rule. Consistent with the statutory schemes at issue, in a situation where an employer is required to pay workers' compensation to an injured employee and the employer is also responsible for indemnifying the third party tortfeasor, the employer is entitled to offset the amount of workers' compensation paid or awarded from the amount of the tort judgment. *See, e.g., Parry v. Allstate Ins. Co.*, 408 Md. 130, 136, 968 A.2d 1053, 1057 (2009) (concluding that "[i]n those situations in which the person injured on the job brings an action against and recovers damages from the third-party tortfeasor, following a workers'

compensation award or payment of compensation, [Labor and Employment Article] § 9–902 prevents the person from receiving a windfall recovery from both sources for the same damages"); *Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 140, 821 A.2d 400, 405 (2003) (determining that an employer has a subrogation interest that acts as a statutory lien on any recovery from a third party tortfeasor); *Great Atl. & Pac. Tea Co. v. Imbraguglio*, 346 Md. 573, 589, 697 A.2d 885, 893 (1997) (holding that where an insurer is responsible for payment of workers' compensation and tort damages, stemming from the same incident, the insurer is "entitled to offset any judgment entered against it for amounts already paid pursuant to its obligation as the workers' compensation insurer"); *Gray v. State Roads Comm'n*, 253 Md. 421, 426, 252 A.2d 810, 813 (1969) (explaining that an employer is entitled to reimbursement from a judgment against a third party tortfeasor for any workers' compensation already paid or awarded). Thus, in the instant case, the Board is entitled to offset the amount of workers' compensation paid or awarded to Respondent from the amount of the tort judgment, so as to avoid the unfairness of double recovery.

Petitioners contend that, except in accordance with limited exceptions not applicable in the instant case, the exclusivity rule in the Workers' Compensation Act prohibits suits against employers by employees for injuries sustained during the course of employment. Petitioners claim that requiring the Board to pay Respondent workers' compensation and the amount of a tort judgment for the negligent acts of Mr. Iglehart "is incompatible with the intent of the Legislature that an employee may not receive a double recovery from her employer for injuries sustained in the course and scope of her employment." According to Petitioners, Mr. Iglehart is not distinct from the Board and, thus, he is not a third party that can be subjected to a tort suit, as contemplated by the Workers' Compensation Act. In Petitioners' view, "[i]f [Respondent] is allowed to collect the judgment entered against the Board and/or Mr. Iglehart, county boards of education in the future would not have a viable recourse for recouping their

losses in workers' compensation cases." Rather, Petitioners assert, "[t]he Court would be creating an exception that places legal and financial liability on just one type of employer (county boards of education) for payment of both workers' compensation benefits and a judgment against a board employee for injuries arising from an on-the-job accident."

Respondent argues that employers in Maryland are entitled to rely on the assumption that they will not be liable to employees injured during the course of employment, beyond workers' compensation benefits, unless they expressly waive immunity by agreeing to assume responsibility for contribution or indemnification. Respondent takes the position that CJ § 5-518 creates such an express waiver of the Board's immunity in the instant case. According to Respondent, the tort suit at issue was a direct action against Mr. Iglehart, not against the Board, even though the Board was statutorily required to satisfy any monetary judgment entered. Respondent contends that such a suit, against a negligent co-employee, is allowed under the Workers' Compensation Act. Thus, Respondent asserts that her actions were not in violation of the relevant statutory provisions.

### A. Workers' Compensation Statute Generally

The Maryland Workers' Compensation Act was first enacted by Chapter 800 of the Acts of 1914. The Act, currently codified under Maryland Code, sections 9–101 to 9–1201 of the Labor and Employment Article, generally requires an employer "to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is at fault for the injury." *Franch v. Ankney*, 341 Md. 350, 357–58, 670 A.2d 951, 954 (1996) (citation omitted). The preamble to the original Act indicated that "the then subsisting law with respect to injuries sustained by workmen in the course of their employment was inadequate, unsatisfactory, and uneconomic from the standpoint of the best interest of the workmen, the employer and the State[.]" *Victory Sparkler & Specialty Co. v. Francks*, 147 Md. 368, 373, 128 A. 635, 636 (1925). The Act

was designed to effectuate the following balance: "on one hand, the Act took away employees' rights to sue employers for negligence, yet, on the other hand it ensured employees the 'right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault.'" *Rodrigues–Novo v. Recchi Am., Inc.*, 381 Md. 49, 56, 846 A.2d 1048, 1052 (2004) (quoting *Brady v. Ralph Parsons Co.*, 308 Md. 486, 496, 520 A.2d 717, 723 (1987)); *see Parry*, 408 Md. at 144, 968 A.2d at 1061 (explaining that "the Act provides employees suffering from work-related accidental injuries, regardless of fault, with a certain, efficient, and dignified form of compensation. In exchange, employees abandon common law remedies, thereby relieving employers from the vagaries of tort liability" (quoting *Polomski v. Mayor of Balt.*, 344 Md. 70, 77, 684 A.2d 1338, 1341 (1996))); *Imbraguglio*, 346 Md. at 582, 697 A.2d at 889–90; *Victory Sparkler*, 147 Md. at 376–77, 128 A. at 638 (noting that "the statute has given to labor what it never had before, and has taken from capital what it had always enjoyed, and has compensated the latter by limiting its liability, while ... conforming to the act, to the payment of compensation only to those who sustain an injury, arising out of and in the course of their employment, that is compensable under the act").

With certain limited exceptions, the Workers' Compensation Act "is a substitute for the employer's common law liability for negligence, subject to his common law defenses, and creates an absolute, but limited, liability regardless of fault, such liability upon a conforming employer being exclusive." *Flood v. Merchs. Mut. Ins. Co.*, 230 Md. 373, 377, 187 A.2d 320, 322 (1963) (citing *Cox v. Sandler's, Inc.*, 209 Md. 193, 198–99, 120 A.2d 674, 677 (1956)); *Hart v. Sealtest, Inc.*, 186 Md. 183, 193, 46 A.2d 293, 297 (1946) (concluding that "the Workmen's Compensation Act substitutes for the common law liability of the [employer] for negligence, subject to common law defenses, an absolute, but limited, liability regardless of fault, and makes that liability exclusive, in the case of a conforming employer" (citations omitted)). In *Suburban Hospital, Inc. v. Kirson*, 362 Md. 140, 172, 763 A.2d 185, 202

(2000), we explained that "[t]he only exceptions in the Labor and Employment title permitting a right of action against the employer deal with the failure to secure compensation, LE § 9–509(c), and deliberate acts by the employer[,] LE § 9–509(d)."

With regard to exclusivity of compensation from an employer under the Act, Md.Code (1957, 2008 Repl.Vol.), § 9–509 of the Labor and Employment Article provides:

(a) Except as otherwise provided in this title, the liability of an employer under this title is exclusive.

(b) Except as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person.

(c) (1) If an employer fails to secure compensation in accordance with this title, a covered employee who has sustained an accidental personal injury, compensable hernia, or occupational disease or, in case of death, the personal representative of the covered employee may:

(i) bring a claim for compensation under this title; or

(ii) bring an action for damages.

(2) In an action of a covered employee or personal representative under this subsection, an employer may not plead as a defense that:

(i) the covered employee assumed the risk of employment;

(ii) the covered employee was contributorily negligent; or

(iii) the negligence of a fellow servant caused the accidental personal injury, compensable hernia, or occupational disease.

(d) If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependent of the covered employee may:

(1) bring a claim for compensation under this title; or

(2) bring an action for damages against the employer.

The rationale behind the exclusivity rule is that "the employer has undertaken the burden of supplying workmen's compensation insurance in return for immunity from suit." *Hauch v. Connor*, 295 Md. 120, 127, 453 A.2d 1207, 1211 (1983) (citations omitted). The Act, thus, "recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of caring for the helpless human wreckage found [along] the trail of modern industry." *Parry*, 408 Md. at 143, 968 A.2d at 1061 (quoting *Polomski*, 344 Md. at 76, 684 A.2d at 1341). The provisions of the Act "reflect[ ] a compromise between employees' rights to pursue common law and other statutory damages for their injuries, and the burden to employers of having to provide workers' compensation benefits." 1 Clifford B. Sobin, *Maryland Workers' Compensation* § 20:4, at 651 (2011).

## B. Recovery from Third Party Tortfeasors

If a compensable injury under the Workers' Compensation Act "was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect therefor[e], the [Act] gives to the parties specifically designated therein, under the conditions therein set forth, a right of action against a third party, the tortfeasor." *Clough & Molloy, Inc. v. Shilling*, 149 Md. 189, 195, 131 A. 343, 345 (1925); *Franch*, 341 Md. at 358, 670 A.2d at 954. As explained by the scholar Arthur Larson, "[t]he basic concept underlying third party actions is the simple moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer." 2 Arthur Larson, *Workers' Compensation Law* § 71.10, at 165 (1997). When the statutory scheme was originally enacted, it "forced employees to choose between filing suit against a third party tort-feasor and filing a claim under the Act; the employee could do one or the other, but not both." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 146, 821 A.2d 400, 408 (2003) (citing *Hubbard v. Livingston*

*Fire Prot., Inc.,* 289 Md. 581, 587, 426 A.2d 901, 904–05 (1981)). Thus, after workers' compensation benefits were awarded to the injured employee, only the employer or insurer could bring suit against a third party tortfeasor. *Id.*

The Act was subsequently amended to allow injured employees to both claim workers' compensation under the provisions of the Act and to bring suit against a third party tortfeasor. *Podgurski,* 374 Md. at 146–47, 821 A.2d at 408; *see Collins v. United Pac. Ins. Co.,* 315 Md. 141, 145, 553 A.2d 707, 708 (1989) (contemplating that under the current version of the statute "a claimant does not lose the right to proceed against a tort-feasor by accepting workers' compensation benefits"). This Court explained the procedure under the Act in *Anne Arundel Cnty. v. McCormick,* 323 Md. 688, 594 A.2d 1138 (1991), stating that "[f]or two months after compensation is awarded or paid, the employer has the exclusive right to sue the third party ... [and][t]hereafter, the employer and employee have concurrent rights to do so." *McCormick,* 323 Md. at 692, 594 A.2d at 1140; *see also Podgurski,* 374 Md. at 140, 821 A.2d at 404–05; *Imbraguglio,* 346 Md. at 583, 697 A.2d at 890; *W. Md. Ry. Co. v. Employers' Liab. Assurance Corp.,* 163 Md. 97, 101, 161 A. 5, 7 (1932). We recognized in *Collins* that "[t]he legislature clearly gave the claimant the unfettered right to bring the third party action at any time after two months following the award of compensation." *Collins,* 315 Md. at 151, 553 A.2d at 712.[4]

---

4. We note that, for purposes of third party suits brought pursuant to LE § 9–902, the applicable statute of limitations for the tort action, governed by statute or common law, controls the time period during which an injured employee may file suit against the tortfeasor responsible for causing his or her workplace injury. Thus, while an employer or insurer has the exclusive right to file suit against a third party tortfeasor for the two months following a workers' compensation award, a third party suit brought by an injured employee must, in any event, be filed within the applicable limitations period, which begins to run on the date of accrual. *See Turner v. Smalis, Inc.,* 622 F.Supp. 248, 251 (D.Md.1985) (explaining that the Maryland Workers' Compensation Act "does not postpone the accrual of an injured employee's cause of action against a third party until two months after his first award of compensation, but, rather, merely interrupts the running of limitations for a

Md.Code (1957, 2008 Repl.Vol.), § 9–901 of the Labor and Employment Article provides:

> When a person other than an employer is liable for the injury or death of a covered employee for which compensation is payable under this title, the covered employee or, in case of death, the personal representative or dependents of the covered employee may:
>
> (1) file a claim for compensation against the employer under this title; or
>
> (2) bring an action for damages against the person liable for the injury or death or, in case of joint tort feasors, against each joint tort feasor.

Md.Code (1957, 2008 Repl.Vol.), § 9–902 of the Labor and Employment Article provides:

> (a) If a claim is filed and compensation is awarded or paid under this title, a self-insured employer, an insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund may bring an action for damages against the third party who is liable for the injury or death of the covered employee.
>
> (b) If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund recovers damages exceeding the amount of compensation paid or awarded and the amount of payments for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title, the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund shall:
>
> (1) deduct from the excess amount its costs and expenses for the action; and

---

period of two months after his first award of compensation" (citing *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 228–30, 492 A.2d 1286, 1293–94 (1985))); *Hayes v. Wang*, 107 Md.App. 598, 600, 669 A.2d 771, 771 (1996) (holding that, in an action by an injured employee against a third party tortfeasor, "§ 9–902(d) of the Labor and Employment Article, adds a two month tolling period to the general three year statutory limit").

pay the balance of the excess amount to the covered employee or, in case of death, the dependents of the covered employee.

(c) If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund does not bring an action against the third party within 2 months after the Commission makes an award, the covered employee or, in case of death, the dependents of the covered employee may bring an action for damages against the third party.

(d) The period of limitations for the right of action of a covered employee or the dependents of the covered employee against the third party does not begin to run until 2 months after the first award of compensation made to the covered employee or the dependents under this title.

(e) If the covered employee or the dependents of the covered employee recover damages, the covered employee or dependents:

(1) first, may deduct the costs and expenses of the covered employee or dependents for the action;

(2) next, shall reimburse the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund for:

(i) the compensation already paid or awarded; and

(ii) any amounts paid for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title; and

(3) finally, may keep the balance of the damages recovered.

(f) In an action brought by a covered employee or the dependents of the covered employee under subsection (c) of this section, the covered employee or the dependents of the covered employee, the self-insured employer, the insurer, the Subsequent Injury Fund, and the Uninsured Employers' Fund shall pay court costs and attorney's fees in the proportion that the amount received by each bears to the whole amount paid in settlement of any claim or satisfaction of any judgment obtained in the case.

As we stated in *Parry v. Allstate Ins. Co.*, 408 Md. 130, 136, 968 A.2d 1053, 1057 (2009), "[i]n those situations in which the person injured on the job brings an action against and recovers damages from the third-party tortfeasor, following a workers' compensation award or payment of compensation, [LE] § 9–902 prevents the person from receiving a windfall recovery from both sources for the same damages." Rather than allowing an injured employee to keep the entire amount of a compensation award and tort damages, the proper "disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and give the employee the excess." *Gray v. State Roads Comm'n*, 253 Md. 421, 426, 252 A.2d 810, 813 (1969) (quotation omitted); *Collins*, 315 Md. at 145, 553 A.2d at 709 (explaining that "[i]f the claimant brings the action, the claimant must first satisfy the subrogated interest of the insurer out of the proceeds of any settlement or judgment"); *W. Md. Ry. Co.*, 163 Md. at 104, 161 A. at 8. An injured employee who recovers in tort, following an award of workers' compensation, is "in no event . . . entitled to more than the balance remaining after the insurer [or self-insured employer is] reimbursed for the amounts paid by it under the award, and costs and expenses." *Shilling*, 149 Md. at 198, 131 A. at 346. Such a reimbursement requirement "precludes 'double dipping' by the claimant and preserves his right to reopen his case after the third-party recovery is depleted." *Podgurski*, 374 Md. at 154, 821 A.2d at 413 (quotation omitted).

With respect to an employer's right to bring a negligence action against the third party tortfeasor, the Workers' Compensation Act "does not create a cause of action in the employer but rather subrogates it to the claim of its injured employee against the responsible third party." *McCormick*, 323 Md. at 693, 594 A.2d at 1140 (citing *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 222, 492 A.2d 1286, 1290 (1985)); *Franch*, 341 Md. at 358, 670 A.2d at 955 (concluding that "[t]he employer's rights in the claim against the third party are only those derived through the employee" (citing *Johnson*

*v. Miles,* 188 Md. 455, 459, 53 A.2d 30, 32 (1947))); *Unsatisfied Claim & Judgment Fund Bd. v. Salvo,* 231 Md. 262, 264, 189 A.2d 638, 639 (1963) (stating that "the Compensation Act . . . expressly confers a right of subrogation on the insurance carrier, to sue and recover from a negligent third person" (internal citation omitted)); *Barrett v. Indem. Ins. Co.,* 152 Md. 253, 259–60, 136 A. 542, 544 (1927). The employer's subrogation interest "acts as a statutory lien on any recovery the employee may obtain from the third-party." *Podgurski,* 374 Md. at 140, 821 A.2d at 405 (quotation omitted); *Franch,* 341 Md. at 358, 670 A.2d at 955. Thus, "[t]here is only one claim, and that is of the one injured, or his dependents in case of his death, and one judgment, the division of which is fixed by statute." *W. Md. Ry. Co.,* 163 Md. at 104, 161 A. at 8.

Employees injured during the course of their employment by a negligent co-employee are entitled to bring suit against that co-employee, pursuant to LE § 9–902. As expressed by Maurice J. Pressman, "[a] negligent co-employee is a third party within the meaning of the Compensation Act." Maurice J. Pressman, *Workmen's Compensation in Maryland* § 6–2, at 527 (2d ed. 1977); Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 16.02 (3d ed. 2007) [hereinafter Gilbert & Humphreys] (asserting that "[t]hird parties subject to civil suit for injuries caused to a workers' compensation claimant include . . . co-employees" (citation omitted)). This Court observed in *Hutzell v. Boyer,* 252 Md. 227, 233, 249 A.2d 449, 452 (1969), "Although there are no decisions in this Court involving a tort action by an employee against a co-employee, we note the fact that for over 50 years the Workmen's Compensation Law of this State has contained no express prohibition against such a suit." More recently, in *Hill v. Knapp,* 396 Md. 700, 711, 914 A.2d 1193, 1199 (2007), we stated that "[i]t is well established that the Maryland Workers' Compensation Act does not exclude tort actions between co-employees[.]" We recognized in *Suburban Hosp., Inc. v. Kirson,* 362 Md. 140, 177, 763 A.2d 185, 205 (2000), that "[i]n Maryland, a co-employee, as such, does not partake of the employer's immunity under the [Work-

ers' Compensation] Act." As we stated in *Hauch v. Connor,* 295 Md. 120, 128, 453 A.2d 1207, 1211–12 (1983) (citation omitted), "[t]he rationale for precluding employee-employer suits . . . does not apply in actions by employees against fellow employees." We noted in *Kirson* that there are certain circumstances, not applicable in the instant case, where a supervisory co-employee is not contemplated as a third party subject to a tort suit because the supervisory co-employee enjoys the employer's immunity. *Kirson,* 362 Md. at 177–78, 763 A.2d at 205.

Respondent, in the case *sub judice,* brought a negligence action against Mr. Iglehart on the theory that, while both were working in the scope of their employment with the Board, Mr. Iglehart acted in a negligent manner that resulted in injury to Respondent. It is not contended that Mr. Iglehart was acting in a supervisory capacity at the time of the incident. As stated above, Maryland law allows a third party tort suit to be brought against a negligent co-employee who is not a supervisor. Therefore, Mr. Iglehart, as a negligent co-employee of Respondent who caused her injury, was a proper defendant in a third party tort suit brought pursuant to LE § 9–902.

## C. Indemnification by County Boards of Education

Having concluded that Mr. Iglehart was a proper defendant in Respondent's negligence action, we next address the issue of whether joining the Board as a party in the tort suit and requiring the Board to pay any judgment entered violated the exclusivity rule of the Workers' Compensation Act. While we have not specifically addressed a situation involving statutorily required indemnification of a tortfeasor by an employer who has paid compensation to an injured employee under the Workers' Compensation Act, we have confronted a case where an employer responsible for paying compensation under the Act was contractually obligated to indemnify the third party tortfeasor. In *State ex rel. State Accident Fund v. N.Y., Phila. & Norfolk R.R. Co.,* 141 Md. 305, 307, 118 A. 795, 796 (1922), we addressed the issue of "whether the agreement of

the employer of the deceased workman to indemnify the present defendant [tortfeasor] against any liability for the incident, which caused his death, [was] a bar to [the tort] suit brought under the terms of the Workmen's Compensation Act." While employed by George U. McAllen, and working on the property of the New York, Philadelphia and Norfolk Railroad Company (the Railroad Company), Frank M. Johnson was killed by an electric current. *N.Y., Phila. & Norfolk R.R. Co.*, 141 Md. at 306, 118 A. at 796. The State Industrial Accident Commission ordered that McAllen, the employer, and the State Accident Fund, the insurer, pay compensation to Johnson's widow. *Id.* Subsequently, the State, for the use of the State Accident Fund and Mrs. Johnson, brought suit against the Railroad Company, alleging that the uninsulated wire that had caused the decedent's death had been negligently maintained by the Railroad Company. *N.Y., Phila. & Norfolk R.R. Co.*, 141 Md. at 306–07, 118 A. at 796. As a defense to the suit, the Railroad Company claimed that it had a license agreement with McAllen containing a provision that McAllen would indemnify it from all claims for damages under circumstances covered in the terms of the agreement. *N.Y., Phila. & Norfolk R.R. Co.*, 141 Md. at 307, 118 A. at 796.

On review in this Court, we observed that the contract of insurance between the employer and its insurer, and the agreement of indemnification between the employer and the Railroad Company, were different in terms of their purposes and effects. *N.Y., Phila. & Norfolk R.R. Co.*, 141 Md. at 309, 118 A. at 797. The former "assure[d] the payment of compensation to injured employees of the insured or their dependents, which may be claimed from the employer, regardless of any question of fault or negligence, while the other . . . [was] an undertaking of the employer to save harmless the defendant from a liability asserted upon a theory which the contract of insurance disregards." *N.Y., Phila. & Norfolk R.R. Co.*, 141 Md. at 309–10, 118 A. at 797. The negligence action was brought for the benefit of the insurer and the decedent's widow. *N.Y., Phila. & Norfolk R.R. Co.*, 141 Md. at 310, 118 A. at 797. After the insurer had been reimbursed, if there

was any excess judgment, Mrs. Johnson was entitled to receive it. *Id.* Thus, we held that "the agreement [of indemnification] pleaded by the defendant [tortfeasor] should not be treated as an effective bar to the action." *Id.*

This Court later affirmed in *Balt. Transit Co. v. State ex rel. Schriefer,* 183 Md. 674, 678, 39 A.2d 858, 860 (1944) (citation omitted), that a negligence action against a third party tortfeasor, resulting from a workplace injury, "is not barred by an agreement of the employer to indemnify the negligent third party." We also stated in *Am. Radiator & Standard Sanitary Corp. v. Mark Eng'g Co.,* 230 Md. 584, 590, 187 A.2d 864, 867 (1963), "Since 1948 . . . employers in Maryland have been entitled to rely on the assumption that they would not be liable for or on account of an injury to an employee, beyond payment of compensation, unless they expressly waived immunity by agreeing to assume an obligation for contribution or indemnity." Similarly, the authors of the *Maryland Workers' Compensation Handbook* note that "[n]othing in the statute forbids an employer to waive his or her immunity under the Workers' Compensation Act by entering into an indemnity agreement." Gilbert & Humphreys, § 15.01 (citing *Mason v. Callas Contractors, Inc.,* 494 F.Supp. 782, 784 (D.Md.1980)).

In accordance with Maryland law, therefore, an employer who is responsible for payment of workers' compensation, either directly or through an insurance carrier, may enter into an indemnification contract with a third party tortfeasor. In our case law on the subject, we have determined that such a contractual obligation does not offend the principles of the exclusivity rule contained in LE § 9–509. Rather, a contractual obligation to indemnify a third party tortfeasor creates an exception to the limitation on recovery from an employer by an injured employee under the exclusivity rule of the Workers' Compensation Act. In our view, the statutory obligation of county boards of education to indemnify their negligent employees, under CJ § 5–518, similarly does not offend the exclusivity rule. The statutory obligation to indemnify provides, in effect, an exception to the exclusivity

rule, whereby an injured board of education employee may maintain a tort action against a negligent co-employee, who is entitled to indemnification from tort damages by the county board, the employer. Thus, in the instant case, the Board's statutory requirement, pursuant to CJ § 5–518, to indemnify Mr. Iglehart, its employee, does not violate the exclusivity rule. It was not improper for Respondent to initiate a third party tort action against Mr. Iglehart, in accordance with LE § 9–902, and to join the Board as a party for purposes of indemnification. The Board's corresponding obligation to satisfy any tort judgment recovered by Respondent is not inconsistent with the statutory scheme.

Furthermore, in support of our conclusion, we again find it useful, for the sake of comparison, to refer to certain provisions in the LGTCA. We note that, under Md.Code (1987, 2006 Repl.Vol.), § 5–302(c) of the Courts and Judicial Proceedings Article, the Legislature placed a limitation on the remedies available to a local government employee injured by a negligent co-employee during the course of employment, stating, "If the injury sustained is compensable under the Maryland Workers' Compensation Act, an employee may not sue a fellow employee for tortious acts or omissions committed within the scope of employment." Subsection (c) of the statute, therefore, prohibits an injured local government employee from suing a negligent co-employee, an individual who would be entitled to indemnification by the local government under the LGTCA. The statute expressly limits the recovery available to a local government employee injured by a negligent co-employee during the course of employment to workers' compensation benefits. In adopting this provision, the General Assembly likely contemplated the possibility of a situation where a local government employee was injured by a negligent co-employee during the course of employment, and the local government was thereby responsible both for compensating the injured employee under the Workers' Compensation Act, as an employer, and for paying the amount of any tort judgment entered against the negligent co-employee, as an indemnitor. In addressing that situation, the Legislature

decided to prohibit injured local government employees from suing their negligent co-employees for acts or omissions committed during the course of employment—a situation that would have resulted in the local government being responsible for satisfying a workers' compensation award and a tort judgment. The Legislature must have been aware of the potential for a similar situation to arise in the context of CJ § 5–518, where a county board of education employee negligently injures a co-employee. With this knowledge, the General Assembly declined to establish a prohibition against an injured county board of education employee suing a negligent co-employee, similar to the prohibition provided in CJ § 5–302(c). Even if we were to assume that this was an oversight on the part of the Legislature, it is not our province to rewrite a statute in order to cure a legislative oversight. *See McGlone v. State*, 406 Md. 545, 559, 959 A.2d 1191, 1199 (2008) (indicating that "[w]e interpret the words enacted by the Maryland General Assembly; we do not rewrite the language of a statute to add a new meaning" (citation omitted)); *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005); *Simpson v. Moore*, 323 Md. 215, 223, 592 A.2d 1090, 1094 (1991) (concluding that "a court is not wholly free to rewrite a statute merely because of some judicial notion of legislative purpose" (quotation omitted)).

## D. Recoupment of Losses

Lastly, we address Petitioners' concern that, if we allow recovery against the Board for tort damages stemming from Mr. Iglehart's negligence, the Board, as a self-insurer, will have no method for recouping its losses from the amount of workers' compensation paid or awarded. As we have consistently held, the Workers' Compensation Act, under LE § 9–902(e), provides that in a suit against a third party tortfeasor, any recovery obtained by the employer or the injured employee shall be used to reimburse the employer for any amount of workers' compensation paid or awarded. *Collins v. United Pac. Ins. Co.*, 315 Md. 141, 145, 553 A.2d 707, 709 (1989); *Gray v. State Roads Comm'n*, 253 Md. 421, 426,

252 A.2d 810, 813 (1969); *W. Md. Ry. Co. v. Emp'rs Liab. Assurance Corp.,* 163 Md. 97, 104, 161 A. 5, 8 (1932); *Clough & Molloy, Inc. v. Shilling,* 149 Md. 189, 198, 131 A. 343, 346 (1925). This Court explained in *Great Atl. & Pac. Tea Co. v. Imbraguglio,* 346 Md. 573, 589, 697 A.2d 885, 893 (1997), that "[u]nder [LE] § 9–902(e), a successful [tort] judgment against the insurer simply means that the insurer is entitled to offset any judgment entered against it for amounts already paid pursuant to its obligation as the workers' compensation insurer." Therefore, in the case of a self-insured employer, who is required to indemnify the third party tortfeasor, any amount of damages recovered by the injured employee in the tort suit may be offset by the amount of workers' compensation paid or awarded to the injured employee. As we explained, the Workers' Compensation Act is designed to guard against double recovery from an employer and a windfall recovery by an injured employee. The employer is entitled to recoup its losses from payment of a workers' compensation award with the proceeds of a monetary judgment recovered from a tortfeasor liable for the injury. That fundamental principle of Workers' Compensation law is not eroded when the employer is both the provider of workers' compensation benefits and the source of recovery in a tort claim. Therefore, in the instant case, the Board is entitled to a setoff from the tort judgment entered against it in the amount of workers' compensation paid or awarded to Respondent as of the date of the tort judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONERS.**